UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | | |
|---|---|---|---|
| RUFUS LAMAR RAGLAND, | ) | | |
| | ) | | |
| Petitioner, | ) | | |
| | ) | | |
| v. | ) | Nos.: | 3:14-CR-104-TAV-HBG-1 |
| | ) | | 3:16-CV-597-TAV |
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Respondent. | ) | | |

## **MEMORANDUM OPINION**

Before the Court is Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Doc. 33].[1] The United States responded in opposition on November 4, 2016 [Doc. 37]. Petitioner did not reply and the time for doing so has now passed. E.D. Tenn. L.R. 7.1, 7.2. For the reasons below, Petitioner's § 2255 motion [Doc. 33] will be **DENIED** and **DISMISSED WITH PREJUDICE**.

**I.    BACKGROUND**

On August 22, 2014, law enforcement was alerted by OnStar, a security and tracking communications system, that a vehicle equipped with OnStar technology had been stolen from Enterprise Rental and was travelling southbound on Interstate 75 [Doc. 18 ¶ 4(a)]. Officers began searching for the stolen vehicle, and OnStar remotely activated the vehicle's emergency

---

[1]    On February 11, 2016, this Court instructed the Federal Defender Services of Eastern Tennessee (FDSET) to "identify defendants with a claim for relief under [*Johnson v. United States*, 135 S. Ct. 2551 (2015)]" and appointed FDSET to "represent any defendant who seeks relief under § 2255 in light of [the] *Johnson* [decision]." *See* E.D. Tenn. SO-16-02 (Feb. 11, 2016). The Order provided for substitute CJA counsel in cases where a conflict of interest prevents FDSET from fulfilling its obligations. *Id.* FDSET notified this Court of such a conflict on October 17, 2016 [Doc. 35]; this Court appointed CJA counsel three days later with instructions that any supplement should be filed within thirty days of appointment [Doc. 36]. No supplement has been received.

flashers [*Id.*]. Officers spotted the vehicle on the interstate and attempted to stop it, but the vehicle evaded officers as it exited the interstate [*Id.*]. OnStar then decreased the power of the vehicle and was able to slow its speed to 20 to 30 miles per hour [*Id.*]. The vehicle pulled into a gas station and stopped behind a black Chevy Tahoe, whose owner fled on foot as officers approached [*Id.* ¶ 4(b)].

Petitioner exited the stolen vehicle and ran toward the Tahoe [*Id.*]. He then hopped into the driver's seat, started the engine, and began driving away [*Id.*]. Officers ordered Petitioner to stop, but he ignored them and accelerated forward, ramming into a police car and then reversing into a concrete pole [*Id.*]. The officers drew their guns and again ordered Petitioner to stop the vehicle [*Id.*]. Instead, Petitioner again accelerated forward—this time directly into the path of the officers and their patrol cars, striking one officer who was existing his patrol car [*Id.*]. Petitioner knocked the officer out of his way as he fled [*Id.*]. Now driving the Tahoe, Petitioner traveled at reckless speeds and nearly ran a motorcycle and several vehicles off the road [*Id.* ¶ 4(c)]. Eventually, Petitioner was taken into custody and the stolen vehicle left at the gas station was inventoried [*Id.*]. Officers found a loaded .38 Taurus revolver with the serial numbers removed, digital scales, and a large amount of marijuana separated into 150 individual baggies [*Id.*].

Petitioner was charged with possessing marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(D); possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1); and possessing a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) [Doc. 1 pp. 1–2]. He pled guilty to the § 922(g)(1) offense and stipulated under a Rule 11(c)(1)(C) agreement to being an armed career criminal subject to the Armed Career Criminal Act's (ACCA), 18 U.S.C. § 924(e), fifteen-year mandatory minimum

2

Case 3:14-cr-00104-TAV-HBG   Document 38   Filed 01/30/17   Page 2 of 9   PageID #: 243

sentence [Doc. 18 ¶ 1(a); Presentence Investigation Report (PSR) ¶¶ 38–39 (noting that Petitioner had four prior Tennessee convictions for aggravated burglary)]. The United States Probation Office assigned Petitioner an advisory Guideline range of 188 to 235 months [PSR ¶¶ 43, 70]. On February 16, 2016, this Court accepted Petitioner's plea and imposed a below-Guideline sentence of 180 months [Docs. 29, 33–1 pp. 5, 13–19]. No direct appeal was taken.

## II. TIMELINESS OF PETITIONER'S CLAIMS

Section 2255(f) places a one-year statute of limitations on all petitions for collateral relief under § 2255 running from either: (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f). For purposes of the subsection (f)(1)—where the statutory period expires one year from the date on which the judgment of conviction becomes final—a "conviction becomes final at the conclusion of direct review." *Brown v. United States*, 20 F. App'x 373, 374 (6th Cir. 2001) (quoting *Johnson v. United States*, 246 F.3d 655, 657 (6th Cir. 2001)). "[W]hen a federal criminal defendant does not appeal to the court of appeals, [direct review concludes] upon expiration of the period in which the defendant could have appealed to [such court], even when no notice of appeal was filed." *Johnson v. United States*, 457 F. App'x 462, 465 (6th Cir. 2012) (quoting *Sanchez-Castellano v. United States*, 358 F.3d 424, 427 (6th Cir. 2004)). Petitioner's judgment of conviction became final on

3

March 1, 2016, fourteen days after the Court entered judgment on February 16, 2016. *See Sanchez Castellano v. United* States, 358 F.3d 424, 428 (6th Cir. 2004) (explaining unappealed judgments of conviction becomes final when the period for filing a direct appeal has elapsed); Fed. R. App. P. 4(b)(1)(A) (20012) (noting criminal defendant was required to file a notice of appeal within fourteen days of entry of the judgment appealed). Petitioner submitted the instant petition within a year of that date [Doc. 33].

### III. STANDARD OF REVIEW

The relief authorized by 28 U.S.C. § 2255 "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

### IV. ANALYSIS

Petitioner articulates a single ground for relief, suggesting trial counsel rendered constitutionally deficient assistance when he advised Petitioner to plead guilty as an armed career criminal [Doc. 33 p. 4]. Specifically, Petitioner suggests that counsel should have anticipated the Supreme Court's subsequent decision in *Mathis v. United States*, 136 S. Ct. 2243 (2016)—which expounded on the categorical approach first announced in *Taylor v. United States*, 495 U.S. 575, 599 (1990), and refined in *Descamps v. United States*, 133 S. Ct. 2276

4

(2013), and objected to the use of Petitioner's prior aggravated burglary convictions as predicate conviction in light of the same [*Id.* (suggesting that *Johnson v. United States*, 135 S. Ct. 2551 (2015)—which ruled the residual clause of the ACCA unconstitutionally vague—prevents categorization under the residual provision and the *Mathis* decision precludes categorization under the enumerated-offense clause)].

### A. Failure to Anticipate the Mathis Decision and Advise Against Plea

A petitioner alleging ineffective assistance must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987). First, the petitioner must establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *id.*, as measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Counsel's assistance is presumed to have been effective, and the petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003); *see also Strickland*, 466 U.S. at 689 (a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound . . . strategy" (internal citation omitted)).

Second, the petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). If a petitioner fails to prove that he sustained prejudice, the Court need not decide whether counsel's performance was deficient. *See United States v. Hynes*, 467 F.3d 951, 970 (6th Cir. 2006) (holding that alleged "flaws" in

5

trial counsel's representation did not warrant a new trial where the claims, even if true, did not demonstrate that the jury would have reached a different conclusion).

Petitioner's argument relies on the implicit suggestion that Tennessee aggravated burglary no longer qualifies as a violent felony under § 924(e) after the *Johnson* and *Mathis* decisions. The Court finds that it need not make a determination on that issue, however, because binding Sixth Circuit authority at the time of Petitioner's sentencing held that all four of his aggravated burglary convictions qualified as violent felonies independent of the residual clause invalidated by the *Johnson* decision. What, if any, impact the *Mathis* decision has had on those same decisions for purposes of contemporary sentencing hearings is irrelevant because: the *Mathis* decision was decided several months after Petitioner accepted his plea agreement, the Court imposed sentence; and failure to anticipate the alleged change in law does not equate to deficient performance.

The ACCA mandates a fifteen-year sentence for any felon who unlawfully possesses a firearm after having sustained three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). The statute defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-physical-force clause"); (2) "is burglary, arson, or extortion, involves the use of explosives" (the "enumerated-offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). 18 U.S.C. § 924(e)(2)(B). It was this third clause—the residual clause—that the Supreme Court deemed unconstitutional in *Johnson*. 135 S. Ct. at 2563. The Court went on to make clear, however, that its decision did "not call into question . . . the

6

remainder of the [ACCA's] definition of violent felony," i.e., the use-of-physical-force and enumerated-offense clauses. *Id.* Nor does *Johnson* disrupt the use of prior drug offenses as predicates. *See, e.g.*, *United States v. Smith*, No. 10-CR-20058, 2015 WL 5729114, at *9–13 (E.D. Mich. Sept. 20, 2015) (noting that *Johnson* does not affect a defendant's categorization as an armed career criminal based on his or her prior serious drug offenses).

At the time Petitioner entered the plea agreement and this Court imposed sentence, binding Sixth Circuit decision held that Tennessee aggravated burglary categorically qualified as a violent felony under the ACCA enumerated-offense clause. *See United States v. Priddy*, 808 F.3d 676, 684 (6th Cir. 2015) (finding that Tennessee aggravated burglary categorically qualified as a predicate offense under the enumerated offense clause); *United States v. Nance*, 481 F.3d 882, 88 (6th Cir. 2007) (same). The *Johnson* decision—which was decided after Petitioner entered the plea agreement, but before this Court imposed sentence [Docs. 18, 29]—did nothing to alter the binding nature of those decisions on this Court.

In the *Mathis* case, the Supreme Court held: (1) a prior conviction cannot qualify as a predicate offense under the enumerated-offense clause if an element of the crime of conviction is made broader than an element of the generic offense by way of an enumerated list of alternative factual means for satisfying a single indivisible element; and (2) Iowa's burglary statute—which defined "structure" as "any building, structure, [or] land, water, or air vehicle, or similar place adapted for overnight accommodation of persons, or occupied by persons for the purpose of carrying on business or other activity therein, or for the storage or safekeeping of anything of value"—was incapable of supporting ACCA enhancement because the provision was both

7

indivisible and overbroad. *Mathis*, 136 S. Ct. at 2251–52, 2256–57.[2]  In reaching the first conclusion, the Supreme Court expressly overruled the Sixth Circuit's holding in *United States v. Ozier*, 796 F.3d 597 (6th Cir. 2015). *Id.* at 2251 n.1 (noting the existence of a circuit split about whether the modified categorical approach could be used to distinguish between differing factual means of satisfying a single statutory element, reversing Sixth Circuit's decision on the issue in *Ozier*).  The decision was issued on June 23, 2016, four months after Petitioner was sentenced.

To the extent Petitioner suggests that the *Mathis* decision's reversal of *Ozier* should be read as an implicit reversal of *Nance* and *Priddy*, the Court finds that it need not determine whether such is the case because, regardless of the result, trial counsel cannot be held ineffective for failing to predict what would amount to a change in binding circuit precedent. *See, e.g.*, *Green v. Johnson*, 116 F.3d 1115, 1125 (5th Cir. 1997) ("[T]here is no general duty on the part of defense counsel to anticipate changes in the law."); *Alcorn v. Smith*, 781 F.2d 58, 62 (6th Cir.

---

[2]  To determine whether a particular offense qualifies as a violent felony under § 924(e), courts must first identify the precise crime of conviction. *Descamps v. United States*, 133 S. Ct. at 2285.  They do so by employing a "categorical approach," under which courts look "only to the statutory definitions—elements—of a defendant's prior offense, and not to the particular facts underlying [each individual] conviction[]." *Id.* at 2283 (internal quotations omitted).  If violation of the statute invariably involves the use, attempted use, or threatened use of violent force or falls within the generic definitions of burglary, arson, or extortion, then the conviction categorically qualifies as a violent felony and the courts' task is complete.  It is only when the statute criminalizes conduct in excess of that covered by the use-of-physical-force and enumerated-offense clauses, that courts must determine whether the statute is divisible or indivisible.  A divisible statute is one that comprises multiple, alternative versions of the crime. *Id.* at 2281.  When faced with a divisible statute, courts resort to the "modified categorical approach," consulting "a limited class of documents, such as indictments and jury instructions, to determine which alternative [set of elements] formed the basis of the defendant's prior conviction." *Id.*  An indivisible statute is one that contains a single crime, set of elements. *Mathis*, 136 S. Ct. at 2249.  Because the categorical approach is concerned with elements and not the "facts underlying [the] conviction," *Descamps*, 133 S. Ct. at 2285, it is important that courts distinguish between alterative elements—divisible provisions to which the modified categorical approach can be applied—and alternative means for satisfying a single element—indivisible provisions to which it cannot. *Mathis*, 136 S. Ct. at 2253–54.  Convictions under an overly broad, indivisible provision are incapable of serving as predicate offenses under the ACCA. *Id.*

8

1986) (noting non-egregious "errors such as failure to perceive or anticipate a change in the law . . . cannot be considered ineffective assistance of counsel"). Accordingly, the petition will be **DENIED**.

## V. CONCLUSION

For the reasons discussed above, Petitioner's § 2255 motion [Doc. 33] will be **DENIED** and **DISMISSED WITH PREJUDICE**. The Court will **CERTIFY** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** Petitioner leave to proceed *in forma pauperis* on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**ORDER ACCORDINGLY.**

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE